IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACKSON HARPOLE,

Plaintiff,

v.

CAPTAIN STEVEN BOSTON; CAPTAIN HEEHN; C/O TERESA SWART; C/O ASHLEY HILLION; C/O HARRINGTON; NURSE WHITNEY CRAIG; HEATHER COCHELL,

Defendants

No. 2:22-cv-01033-HZ

OPINION & ORDER

Jackson Harpole
Two Rivers Correctional Institution
82911 Beach Access Rd.
Umatilla, OR 97882

Plaintiff pro se

Aaron D. Kelley
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

Keith J. Bauer
Parks Bauer Sime Winkler & Fenerty LLP
570 Liberty Street, SE, Suite 200
Salem, OR 97301

Attorneys for Defendants

HERNÁNDEZ, District Judge:

Pro se Plaintiff Jackson Harpole is an adult-in-custody ("AIC") at Two Rivers Correctional Institution ("TRCI") in eastern Oregon. Plaintiff brings this action against the Oregon Department of Corrections ("ODOC") and several ODOC employees.[1] Plaintiff brings claims under 42 U.S.C. § 1983 for violation of his constitutional rights. He asserts that Defendants Boston, Swart, Heehn, Hillion, Harrington, and Cochell (collectively, "State Defendants") violated his rights under the First, Eighth, and Fourteenth Amendments by failing to protect him from an assault by another AIC. State Defendants move for summary judgment on Plaintiff's § 1983 claims. Plaintiff also brings a medical negligence claim against Defendant Nurse Whitney Craig. Defendant Craig moves separately for summary judgment on this claim.

**BACKGROUND**

Plaintiff is serving a sentence at TRCI for a sex offense. On May 24, 2021, when housed on Unit 8, Plaintiff's cellmate reported to Defendant Officer Harrington that Plaintiff had sexually propositioned him and that he felt uncomfortable living in the same cell as Plaintiff. Decl. of Captain Steven Boston ("Boston Decl.") ¶ 7, ECF 128. Based on Officer Harrington's report, an investigation under the Prison Rape Elimination Act ("PREA") was initiated. *Id.* Plaintiff was brought to an interview room where he appeared angry and told the investigating

[1] On August 18, 2022, the Court dismissed Defendant ODOC and individual Defendants Persson, Davis, Eynon, Cain, Wettlaufer, Roberts, Rumsey, Reyes, and Peters from this action. ECF 8.

officer: "I did say something, but it was taken out of context. That's all I will say about that!" Decl. of Trista Dunn ("Dunn Decl.") ¶ 7; Boston Decl. Ex. 1. Defendant Captain Steven Boston, TRCI's PREA coordinator, reviewed the investigating officer's report and concluded that the cellmate's allegation was substantiated. Boston Decl. ¶ 10, Ex. 2. Captain Boston signed the PREA Investigative Report on June 1, 2021. *Id.*

Under PREA, if an AIC makes an allegation against their cellmate, prison official must remove the person against whom the allegation was made from the cell. Boston Decl. ¶ 9. Because PREA forbids retaliation against someone making a complaint, the complainant cannot be moved. *Id.* Plaintiff was removed from his cell on Housing Unit 8. Decl. of Teresa Swart ("Swart Decl.") ¶ 18, ECF 132. Defendant Officer Teresa Swart used a cellmate matching computer program to assign Plaintiff to a new cell on Unit 6. *Id.* ¶ 19. At the time, Plaintiff had no documented conflicts with anyone on Unit 6. *Id.* ¶ 20.

When Plaintiff was removed from his cell on Unit 8, he told Officer Harrington that he felt unsafe moving to Unit 6 because of his status as a sex offender. Decl. of Jeremy Harrington ("Harrington Decl.") ¶ 4. The day he was moved, Plaintiff sent a grievance form—known as a "kyte"—to Officer Swart, stating that he could "only walk on unit 8 in this institution" because he is a sex offender. Swart Decl. Ex. 3. In the kyte, Plaintiff also noted that it was well known on Unit 6 that he was sex offender and that he had been assaulted four times before on that unit for that reason.[2] *Id.* The same day, May 24, 2021, Plaintiff sent a kyte to Defendant Boston expressing the same concerns about being moved from Unit 8 to Unit 6 as a known sex offender

[2] Plaintiff presents evidence that he was the victim of two documented assaults—one on June 22, 2020, and one on September 18, 2020—when he was previously housed on Unit 6. Pl. Ex. 25; Pl. Ex. 37, ECF 138.

despite having been assaulted four times on Unit 6. Boston Decl. Ex. 3. Plaintiff also stated that the prison gang "BROOD" had a "green light on him." Boston Decl. ¶ 12, Ex. 3.

Two days later, on May 26, 2021, Plaintiff sent another kyte to Officer Swart, expressing that he felt uncomfortable being the only sex offender on Unit 6. Swart Decl. ¶ 22, Ex. 4. He stated: "Every time the door opens I stand at my door waiting on someone to take off on me." *Id.* Officer Swart responded: "You were housed appropriately by the offender match system." *Id.*

On May 29, 2021, Plaintiff sent another kyte, expressing his fear of being attacked and stating that he wanted to move out of Unit 6 and back to Unit 8. Swart Decl. ¶ 23, Ex. 5. Plaintiff again noted that he had been assaulted four times before on Unit 6. *Id.* He also complained that he could not receive all of the "amenities" allowed to AICs, such as "phone, tablet, fresh air (yard), dayroom, clothes being washed" because he was afraid to come out of his cell. *Id.* Defendant received a response from Defendant Officer Heather Cochell, which informed Plaintiff that he needed to complete the appropriate form for a move request. *Id.*; Declaration of Heather Cochell ("Cochell Decl.") ¶ 3, ECF 129.

On June 5, 2021, Plaintiff was assaulted by AIC Jeremiah Sommerlot in the Unit 6 yard. Pl. Ex. 6, ECF 138. An ODOC report described the assault:

> [Sommerlot] approached AIC Harpole and began hitting AIC Harpole with closed fist punches to the head area. This assault continued for a couple of minutes as [Sommerlot] repeatedly punched AIC Harpole in the head and upper body and dozens of knee strikes to his head. AIC Harpole did not fight back and tried to protect his head with his hands and arms. [Sommerlot] finally stopped his assault and AIC Harpole walked inside of Unit 6. Officer Sallee saw that AIC Harpole was bleeding from the head and had a torn shirt.

Pl. Ex. 46.

During the assault, Officer Ashley Hillion was in a room called "the bubble," which is located between the yard and the rest of Unit 6. Hillion Decl. ¶ 3, ECF 133. There are no

computer screens or windows in the bubble, and Officer Hillion did not see or hear the assault. Hillion Decl. ¶¶ 3, 4. Officer Hillion saw Plaintiff with blood on his face when he walked from the yard back into the dayroom on Unit 6. Pl. Ex. 47.

Plaintiff was brought to the TRCI infirmary after the assault, where he was evaluated and treated by Defendant Whitney Craig, a registered nurse employed by ODOC at TRCI. Craig Decl. ¶ 4, ECF 126. Plaintiff suffered lacerations and bruises on his face and scalp, a broken nose, and a broken kneecap that hindered his ability to walk. Pl. Ex. 5. When Nurse Craig saw Plaintiff on the day of the assault, she did not send him to the hospital or order any tests. Am. Compl. ¶ 49, ECF 90. After Plaintiff complained, he was sent to a hospital for x-rays on June 10, 2021. Am. Compl. ¶ 53. The x-rays showed that "his knee cap was in half." Am. Compl. ¶ 55. Plaintiff was given a knee brace and told that he needed physical therapy. Am. Compl. ¶ 55. Plaintiff claims that he has received no crutches and no physical therapy and continues to have chronic pain in his knee. Am. Compl. ¶¶ 56, 57; Pl. Exs. 12-14.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

**DISCUSSION**

Plaintiff brings three claims against Defendants Boston, Swart, Heehn, Hillion, Harrington, and Cochell in their individual and official capacities. Plaintiff asserts claims for: (1) failure to protect under the Eighth Amendment; (2) denial of due process under the Fourteenth Amendment; and (3) retaliation against protected speech under the First Amendment. Plaintiff

seeks declaratory and injunctive relief along with compensatory damages. State Defendants move for summary judgment on all claims against them.

Plaintiff brings a single state-law claim for medical negligence against Defendant Craig. Defendant Craig moves for summary judgment on the sole claim against her.

## I. Eleventh Amendment Immunity

Plaintiff brings claims under 42 U.S.C. § 1983 against each State Defendant in their individual and official capacities. Am. Compl. ¶¶ 10, 11, 13-15. State Defendants argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. Defendants also assert that the Eleventh Amendment prevents Plaintiff from bringing a state-law claim against Defendant Craig.

The Eleventh Amendment stands "for the constitutional principle that state sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64 (1996). Under that principle, "[s]tates may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985). The Eleventh Amendment generally bars suits in federal court against state officials in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."). But Federal courts have long recognized an exception to Eleventh Amendment sovereign immunity when *federal* claims are brought against state officials in their official capacities seeking prospective relief. *Ex parte Young*, 209 U.S. 123 (1908). Thus, under *Ex parte Young*, the Eleventh Amendment does not bar federal courts from granting prospective

relief to prevent state officials from violating or continuing to violate federal law. *Green*, 474 U.S. at 68.

42 U.S.C. § 1983 provides a mechanism to sue any person, who "acting under the color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Under § 1983, a plaintiff may sue state officials in their *individual* capacities for damages. *See Monroe v. Pape*, 365 U.S. 167 (1961). Thus, Plaintiff may bring § 1983 claims against each State Defendant in their individual capacity for violating his rights under the U.S. Constitution. Plaintiff also seeks injunctive relief against each State Defendant in their *official* capacity. State officials sued in their official capacities for prospective relief, rather than compensatory damages, are considered "persons" under § 1983. *Will*, 491 U.S. at 71 n.10 (citing *Graham*, 473 U.S. at 167 n.14). And these claims fall under the *Ex Parte Young* to Eleventh Amendment immunity. Accordingly, Plaintiff may assert § 1983 claims against State Defendants in both their official and individual capacities.

However, the *Ex parte Young* exception does not apply to state-law claims brought in federal court against state officials. *Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89,* 106 (1984). Thus, Eleventh Amendment sovereign immunity applies to such claims. In other words, "the eleventh amendment bars suits in federal court, for both prospective and retrospective relief, brought against state officials acting in their official capacities alleging a violation of *state law*." *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) (citing *id.*) (emphasis added). Under *Pennhurst*, Plaintiff cannot assert a state law medical negligence claim against Defendant Craig in her official capacity.

As for his medical negligence claim against Defendant Craig in her individual capacity, Plaintiff does not assert this claim against the proper party. Under the Oregon Tort Claims Act

("OTCA"), unless a plaintiff alleges damages greater than that specified in Oregon Revised Statute §§ 30.271, 30.272, or 3.273, "the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment . . . is an action against the public body." Or. Rev. Stat § ("O.R.S.") 30.265(3). O.R.S. 30.271 provides a limitation on liability for the state on personal injury actions. The limitation on liability for Plaintiff's medical negligence claim is no less than $2 million, adjusted upward for inflation. O.R.S. 30.271(2)(f)-(g), (4). Plaintiff seeks compensatory damages of $1 million against Defendant Craig. Thus, for his medical negligence claim, Plaintiff alleges damages in an amount less than the limitation on liability provided in O.R.S. 30.271. Under O.R.S. 30.265, Plaintiff's sole cause of action is against Defendant Craig's public employer, who is not a party to this action. *See Vaughn v. First Transit, Inc.*, 346 Or. 128, 133-34, 206 P.3d 181 (2009) ("[U]nder the OTCA, public officers, employees, and agents are not subject to actions for torts committed while acting within the scope of their employment or duties, and the injured person must bring any claim based on their actions against the public body only.").[3] Accordingly, the Court grants summary judgment for Defendant Craig on Plaintiff's medical negligence claim.

---

[3] The Eleventh Amendment bars Plaintiff from bringing a state law medical negligence claim against ODOC in federal court. The Oregon Tort Claims Act provides a limited waiver of Oregon's sovereign immunity for the torts of its officers, employees, and agents acting within the scope of their employment or duties. *Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244, 1269 (D. Or. 2013) (citing O.R.S. 30.265(1)). But by enacting the OTCA, Oregon did not waive its Eleventh Amendment immunity to suit in federal court. *Id.; see Pennhurst*, 465 U.S. at 99 n.9 ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in federal courts."). As an arm of the state, ODOC is immune from suit in federal court for claims brought under state law. *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 989 (9th Cir. 2014).

## II. Constitutional Claims under 42 U.S.C. § 1983

### A. Eighth Amendment—Failure to Protect

Plaintiff alleges that the individual Defendants were deliberately indifferent to the danger he faced from being placed on Unit 6 as a known sex offender. Defendants argue that Plaintiff has not presented facts that satisfy the elements of a deliberate indifference claim under the Eighth Amendment.

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane one." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). The Eighth Amendment requires prison officials to provide humane conditions of confinement, including "tak[ing] reasonable measures to guarantee the safety of inmates." *Id.* (citation omitted). Relevant to the claim here, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation and ellipses omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 834 (internal quotation marks and citation omitted).

Nevertheless, unless a prison official knows of and disregards an excessive risk of harm to an inmate, the official is not liable under the Eighth Amendment. *Id.* at 837. To prove an Eighth Amendment violation based on a failure to protect, a plaintiff must meet two requirements. First, the plaintiff must show that he was "incarcerated under conditions posing a *substantial risk of serious harm*." *Id.* at 834 (emphasis added). Second, the plaintiff must present

facts showing prison officials were deliberately indifferent to the risk to the prisoner's health or safety. *Id.*

*i. Substantial Risk of Harm*

Plaintiff contends that being a known sex offender made him a target for violence on Unit 6. Evidence shows that on May 24, 2021, when he was removed from his cell on Unit 8, he told Officer Harrington that he felt unsafe moving to Unit 6. On the day he was moved, he sent kytes to Officer Swart and Captain Boston, expressing that he could "not walk on" Unit 8 because he is known to be a sex offender and that the group "Brood" had "a green light" on him. Boston Decl. Ex. 3. Over the next five days, Plaintiff sent two more kytes to Officer Swart, expressing that he was afraid to leave his cell because of his imminent fear of being assaulted. Plaintiff was attacked by another AIC on June 5, 2021 and suffered significant injuries, including a broken nose and broken kneecap.

Defendants argue that Plaintiff has not shown that his sex offender status gave rise to a substantial risk of harm. They note that sex offenders are housed on all units at TRCI and that the cell match system did not indicate that Plaintiff had a conflict with any particular individual on Unit 6. Defendants assert that Plaintiff did not inform them of a known specific threat from another AIC. Defendants also emphasize that Plaintiff did not allege that he was afraid of or had a conflict with his eventual attacker—AIC Jeremiah Sommerlot. According to Defendants, a generalized risk of violence in prison is not enough, and the facts do not show that Plaintiff faced a tangible, specific risk of harm. *See Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) ("[G]eneralized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of harm[.]").

But proving there was a substantial risk of harm does not require a plaintiff to show that he "was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021) (quoting *Farmer*, 511 U.S. at 843). "[A] prisoner can establish exposure to a sufficiently serious risk of harm 'by showing that he belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates.'" *Nesbit v. Dep't of Pub. Safety*, 283 F. App'x 531, 534 (9th Cir. 2008) (quoting *Farmer*, 511 U.S. at 843).

Plaintiff expressed to Officer Harrington, Officer Swart, and Captain Boston a credible fear that he would be assaulted if placed on Unit 6 because it was generally known on the unit that he is a sex offender. Plaintiff provides support for a tangible risk of an assault by showing that he had been assaulted four times before on Unit 6. Thus, even though he did not identify Sommerlot as the individual who would assault him, Plaintiff has shown, based on being a sex offender and the previous incidents he had on Unit 6, that there was substantial risk of harm from being placed on that unit. *See Farmer*, 511 U.S. at 843 ("[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such as risk.").

*ii. Deliberate Indifference*

Next, Defendants argue that Plaintiff has not shown that any individual State Defendants were deliberately indifferent or recklessly disregarded a substantial risk of serious harm to him. To violate the Eighth Amendment, "a prison official must have a sufficiently culpable state of mind," which requires more than acting negligently. *Farmer*, 511 U.S. at 834. Deliberate indifference to a substantial risk of harm to a prisoner "is the equivalent of recklessly

disregarding that risk." *Id.* at 836. Prison officials are deliberately indifferent if they are "subjectively aware of a substantial risk of harm to an inmate and disregard[] that risk by failing to respond reasonably." *Wilks v. Neven*, 956 F.3d 1143, 1146 (9th Cir. 2020). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact" that may be inferred from circumstantial evidence. *Farmer*, 511 U.S. at 842. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

The facts, viewed in the light most favorable to Plaintiff, show that some individual Defendants were deliberately indifferent but others were not. Defendant Boston received a kyte from Plaintiff on May 24, 2021, informing him of Plaintiff's fear of assault on Unit 6 because he was a sex offender and had been assaulted on that unit four times before. Defendant Boston responded more than one week later by simply telling Plaintiff that he could apply for administrative housing. Defendant Swart received and responded to two kytes from Plaintiff with the same information. She responded to Plaintiff, stating that he was housed appropriately using the offender match system. Defendant Cochell responded to another kyte sent to Defendant Swart by informing Plaintiff that he needed to fill out the appropriate form for a move request. When Plaintiff told Defendant Harrington of his fear of being assaulted on Unit 6, Defendant Harrington took no action.

Defendants argue that Plaintiff never submitted any documentation that identified a particularized threat that would have prompted them to act. But Defendants Boston, Swart, Cochell, and Harrington were aware of facts from which an inference could be drawn that Plaintiff faced a substantial risk of harm. Plaintiff has shown that, as a known sex offender, he was at risk of being assaulted on Unit 6 because he had already been assaulted there four times. Thus, Defendants were aware of an obvious, substantial risk to Plaintiff's safety on Unit 6. They

cannot "escape liability for deliberate indifference" because they "did not know that [Plaintiff] was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843.

However, as for Defendants Heehn and Hillion, Plaintiff has not made the requisite showing that they were aware of the substantial risk of harm and failed to act. Plaintiff does not allege that Defendant Hillion participated in the decision to house him on Unit 6 or had any authority to move him. Rather, he alleges that Defendant Hillion failed to intervene when he was assaulted. Defendant Hillion was in a room next to where the assault occurred, but the room had no windows or open doors that would have allowed her to see or hear the assault. Because she was unaware of the assault when it was happening, she could not have been deliberately indifferent at the time.

As for Defendant Heehn, Plaintiff sent him a request for administrative housing on June 13, 2021, more than one week after he was attacked. Defendant Heehn denied the request. Because Defendant Heehn only received the transfer request after Plaintiff was assaulted, Plaintiff does not show that he was deliberately indifferent to the risk or could have prevented the assault that is the subject of Plaintiff's claim.

Thus, at the summary judgment stage, Plaintiff has presented enough facts to establish that his Eighth Amendment rights were violated. At minimum, no undisputed facts show that Defendants Boston, Swart, Cochell, and Harrington were not deliberately indifferent to the substantial risk that he would be assaulted by another AIC when he was moved to Unit 6. But Plaintiff has not shown facts that support liability for Defendants Hillion and Heehn on his Eighth Amendment claim.

*iii. Qualified Immunity*

Defendants argue that even if they violated Plaintiff's Eighth Amendment rights, they are shielded from liability by qualified immunity. A defendant is entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis requires a court to address two questions: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation and (2) whether the right at issue was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The right must have been clearly established at the time of the defendant's alleged misconduct, so that a reasonable official would have understood that what he or she was doing under the circumstances violated that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."). When properly applied, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," but does not protect "the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

"[E]ven though the very action in question has not previously been held unlawful . . . officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, (2002). But a government official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). Although existing cases need

not be "directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 ( 2015) (internal quotation marks and citation omitted). Thus, the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted).

Having found that Defendants Boston, Swart, Cochell, and Harrington violated Plaintiff's Eighth Amendment right, the Court must determine whether that right was clearly established at time the violation occurred. Defendants argue that because sex offenders live on every unit throughout TRCI, a reasonable prison official would not have believed a threat of harm to Plaintiff was imminent. Thus, according to Defendants, Plaintiffs right to not be moved to Unit 6, where he was assaulted by another AIC, was not clearly established so that every reasonable official would know that moving Plaintiff was unlawful. Defendants note that after Plaintiff's cellmate reported sexual harassment, they were required under PREA to move Plaintiff. They point out that AICs cannot choose their housing assignment, and the cell match system that assigned Plaintiff to Unit 6 is standardly used to make housing assignments.

But Defendants act of moving Plaintiff was not done in a vacuum. Defendants disregard the fact that their decision to move Plaintiff to Unit 6, though within policy, was made despite a known substantial risk of harm. Defendants knew the risk of moving Plaintiff, a known sex offender, to a unit where had been assaulted four times before. At the time Plaintiff was attacked on Unit 6, "the law regarding prison officials' duty to take reasonable measures to protect

inmates at the hands of other prisoners was 'clearly established.'" *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001) (citing *Farmer*, 511 U.S. at 833). Viewing the facts in the light most favorable to Plaintiff, a reasonable prison official would have foreseen that moving Plaintiff to Unit 6, after he had expressed a credible and pronounced fear of being assaulted on that unit, placed him in harms way.

Defendants assert that no caselaw would have put them on notice that placing Plaintiff on a unit where he had no identified conflicts with specific individuals would violate his constitutional rights. But "it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). And "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. In failure to protect cases, a plaintiff "need not point to caselaw that traces the precise circumstances of the case at hand to show that [the] defendants violated clearly established law." *Brower v. Powell*, No. 2:17-cv-00367-AA, 2020 WL 2832544, at *7 (D. Or. May 29, 2020) (citing *Wilk*, 956 F.3d at 1148). Courts "need not catalogue every way in which one inmate can harm another for us to conclude that a reasonable official would understand that his actions violated the Eighth Amendment." *Wilk*, 956 F.3d at 1148 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016)) (brackets omitted).

Thus, even without a prior case presenting the same factual scenario, Plaintiff's right to not be placed in a situation where he faced a substantial risk of being assaulted was clearly established. Plaintiff's failure to identify a particular individual on Unit 6 who posed a threat is irrelevant. *See Brower*, 2020 W 2832544, at *7 ("[T]he duty to protect caselaw does not distinguish between a threat from a particular person and a more generalized threat from

unnamed persons in the prison population."). Defendants Boston, Swart, Cochell, and Harrington are not shielded from liability by qualified immunity on Plaintiff's Eighth Amendment claim.

**B. Fourteenth Amendment Due Process**

Based on the same facts that support his Eighth Amendment claim, Plaintiff alleges that he was denied due process under the Fourteenth Amendment. Plaintiff relies on his request to Defendant Harrington that he not be moved to Unit 6 and his kytes to Defendants Boston and Swart as evidence that his due process rights were violated. Am. Compl. ¶¶ 42-47. In the kyte to Defendant Swart on May 29, 2021, Plaintiff complained that he could not receive all "amenities" allowed to AICs because of his fear of being attacked. He reported that he lost access to a phone, fresh air, the dayroom, and washed clothes because he was afraid to leave his cell.

The Supreme Court has held that prisoners are entitled to procedural due process when they are subject to disciplinary sanctions. *See Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974). "[P]risoners do not shed all constitutional rights at the prison gate." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). In the prison setting, conditions imposed that cause "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may implicate the Due Process Clause. *Id.* at 484. But "lawful incarceration brings about the necessary limitation of privileges and rights." *Id.* at 485 (citation omitted). The Supreme Court has rejected the notion that "*any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke protections of the Due Process Clause." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Disciplinary actions in prisons that require procedural due process protection include sanctions such as revocation of good time credits and disciplinary segregation. *See*, *e.g.*, *Wolff*, 418 U.S. at 555; *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 988 (9th Cir. 2014); *Ramirez v.*

*Galaza*, 334 F.3d 850, 861 (9th Cir. 2003). But a prison official's discretionary decision to transfer a prisoner typically does not deprive a prisoner of a protected liberty interest such that due process protections are required. *Meachum*, 427 U.S. at 225.

After an incident between Plaintiff and his cellmate that involved the PREA, Defendants made a discretionary decision to transfer Plaintiff to another unit. Plaintiff was not placed in disciplinary segregation or otherwise sanctioned for the PREA incident. Following their standard procedure, Defendants used a cell match computer system to find Plaintiff a cell on another unit. The decision to transfer Plaintiff did not entitle him to any protections under the Fourteenth Amendment Due Process Clause. Whether Defendants were deliberatively indifferent to a substantial risk of harm to Plaintiff when they moved him to Unit 6 is another matter. *See* II.A., *supra*. But because the decision to transfer Plaintiff did not implicate a protected liberty interest, his claim under the Fourteenth Amendment fails.

**C. First Amendment Retaliation**

Plaintiff asserts a claim for First Amendment retaliation against Defendant Swart. Plaintiff alleges that Defendant Swart refused to provide protection to him "as a result of" him having written several kytes to her. Even where conditions of confinement do not implicate a prisoner's due process rights, the prisoner retains a "First Amendment right to file prison grievances." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (citation omitted). And any retaliatory action taken against a prisoner for exercising their right to file grievances violates the First Amendment. *Id.* To prove First Amendment retaliation within the prison context, a plaintiff must show: (1) that a prison official took some adverse action against the prisoner; (2) because of the prisoner's protected conduct; (3) which chilled the prisoner's exercise of First Amendment

rights; and (4) the prison official's action did not reasonably advance a legitimate correctional goal. *Id.* at 567-68.

Plaintiff's claim fails on the second element. Defendant Swart's refusal to move Plaintiff from Unit 6 and failure to protect him from the assault may be considered an adverse action under the First Amendment. But Plaintiff presents no facts showing that Defendant Swart's failure to act was *because* of his complaints or requests to be moved. Plaintiff simply shows that his grievances were denied or, at most, his concerns were ignored. Accordingly, the Court grants summary judgment for Defendant Swart on Plaintiff's claim under the First Amendment.

**CONCLUSION**

The Court GRANTS in part and DENIES in part State Defendants' Motion for Summary Judgment [127]. The Court grants summary judgment for Defendants on Plaintiff's claims under the First Amendment and Fourteenth Amendment. The Court grants summary judgment for Defendants Hillion and Heehn but denies summary judgment for the other State Defendants on Plaintiff's Eighth Amendment claim. The Court GRANTS Defendant Craig's Motion for Summary Judgment [125] and dismisses Plaintiff's medical negligence claim without prejudice.

IT IS SO ORDERED.

DATED: September 4, 2023.

Marco Hernández

MARCO A. HERNÁNDEZ
United States District Judge